In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 16-3677

AFFORDABLE RECOVERY HOUSING,

*Plaintiff-Appellant*,

*v.*

CITY OF BLUE ISLAND, and JIM KLINKER, in his official
capacity as Blue Island Fire Chief,

*Defendants-Appellees*.

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 12 C 4241 — **Robert M. Dow, Jr.**, *Judge*.

———————————

ARGUED APRIL 19, 2017 — DECIDED JUNE 21, 2017

———————————

Before BAUER, POSNER, and HAMILTON, *Circuit Judges*.

POSNER, *Circuit Judge*. Blue Island is a town of some
24,000 residents, slightly south of Chicago. A Catholic order
of nuns called the Mantellate Sisters of Mary has since the
1950s owned a group of five buildings in the town, one a
convent for the nuns, one a church, and the other three orig-
inally constituting the Mother of Sorrows High School, a
boarding school that closed many years ago, whereupon the

buildings were leased to a local school district, which used the site as a public high school until 2009. The following year the founders of Affordable Recovery Housing—an enterprise that wanted to use the convent and high school buildings as a faith-based recovery home that would provide support services, overnight lodging, meals and recreation, job training, medical and dental referrals, religious outreach, and other services to adult men fighting drug and/or alcohol addiction—persuaded the Mantellate Sisters to allow the enterprise to do those things because the few remaining nuns would continue to occupy part of the convent building and the Sisters would obtain rental income. And because most of the property would no longer be vacant, vandalism would no longer be a problem, as it had been.

In February 2011, the mayor approving, Affordable moved 14 of its staff members into the buildings. But the following year Blue Island's fire chief decided that before using the buildings as residential facilities Affordable had to install a sprinkler system in the rooms in which the men in the recovery program would be sleeping. The City Council approved the fire chief's decision.

Compliance would have been an expensive proposition—indeed Affordable could not have afforded to install a sprinkler system before it had any recovery patients, as they were an essential source of revenue (indirectly from public agencies—the patients or most of them would have been indigent). It had already moved in 73 of these men even though it had not obtained from Blue Island the special-use permit it needed to operate its facility in an area zoned Single Family Residential. So instead of installing a sprinkler system or expelling the residents Affordable filed this suit

against Blue Island and the town's fire chief, seeking to enjoin the eviction order based on Affordable's failure to install a sprinkler system and to obtain a judgment that the safety code did not require such a system. Its thinking was that if not required to install sprinklers it wouldn't have to expel the residents, for if sprinklers were not required this would imply that their absence was unlikely to endanger the residents.

But the district judge refused to issue a preliminary injunction, and so the residents had to leave. Indeed many of them had already left under the threat of eviction. Affordable tells us without contradiction that the gap in services caused it to lose touch with its former residents, four of whom suffered fatal overdoses after leaving Affordable's premises. But later Affordable obtained a license from the Illinois Department of Human Services that designated the buildings a recovery house, leading Affordable to move the district court for partial summary judgment on the ground that the enterprise was now governed by the state's safety regulations for recovery houses—regulations that didn't require sprinkler systems in buildings fewer than four stories high, as Affordable's are.

The district judge granted partial summary judgment in favor of Affordable on the ground that the omission of a sprinkler requirement in the state regulations governing recovery homes preempted the inconsistent municipal rule. But though Affordable now can operate a residential recovery house without installing a sprinkler system, it appeals the district judge's determination that it failed to prevail on claims that it made based on the Illinois Religious Freedom Restoration Act and related statutes. Had it prevailed on

those claims it would have been entitled to damages and at-torneys' fees rather than just the right to dispense with sprinkler systems.

The Religious Freedom Restoration Act provides that "government may not substantially burden a person's exer-cise of religion … unless it demonstrates that application of the burden to the person (i) is in furtherance of a compelling governmental interest and (ii) is the least restrictive means of furthering that compelling government interest." 775 ILCS 35/15. Affordable considers helping men recover from drug and/or alcohol abuse to be an exemplar of Christian charity, and argues that being forced to expel 73 residents infringed its exercise of religion. Yet there is no evidence that the ex-pulsion, which turned out to be temporary when the appli-cable state law was discovered, was attributable to anything other than an honest concern with possible fire hazards to the residents.

Moreover, the expulsion was a consequence of Afforda-ble's disregard of the sprinkler requirement. Affordable could have avoided the expulsion by researching the state and local regulations applicable to group recovery housing before beginning its project. Nothing compelled it to rush headlong into business; it chose to take that risk. The Act permits exceptions from otherwise generally applicable laws for persons whose religious exercise is substantially bur-dened by those laws. But Affordable doesn't argue that the sprinkler requirement would have substantially burdened its religious exercise even if it had complied with the re-quirement from the beginning. Consider: had the beds that Affordable's residents slept on been stolen rather than do-nated, Blue Island would not have substantially burdened

Affordable's religious exercise by seizing and removing the stolen property.

The Religious Land Use and Institutionalized Persons Act (a federal statute) establishes the same legal standard as the Illinois Act but applies only to a zoning or landmarking law. 42 U.S.C. § 2000cc-5(5). Even if Blue Island's fire-safety code could be considered a zoning law because of its potential to exclude a building or other land use from a particular area, we know that Affordable is not being excluded from Blue Island or even required to install a sprinkler system.

The Fair Housing Amendments Act forbids "mak[ing] unavailable or deny[ing] a dwelling to any buyer or renter because of a handicap of … a person residing in or intending to reside in that dwelling." 42 U.S.C. § 3604(f)(1). But Affordable of course was not trying to exclude handicapped persons from its facilities, and Blue Island's exclusion when it forced the 73 residents to leaves was quickly undone when Affordable discovered the supervening state law regarding sprinkler systems.

Affordable not having prevailed on any claims that allow for fee-shifting from the loser to the winner of a lawsuit, the "American Rule," requiring each party to bear the expense of its lawyers, governs, barring Affordable's money claims.

The judgment of the district court is

AFFIRMED.